**In re James Donald HARPOLE, and Joy Ellen Harpole, Debtors.**

**No. 98–41437–13.**

United States Bankruptcy Court,
D. Montana,
Butte Division.

March 23, 2001.

Gary S. Deschenes, Deschenes Law Office, Great Falls, MT, for debtors.

Jeffrey T. McAllister, Conklin, Nybo, LeVeque & Lanning, P.C., Great Falls, MT, for Pierce's Flooring, Inc.

## *ORDER*

RALPH B. KIRSCHER, Bankruptcy Judge.

In this confirmed Chapter 13 bankruptcy case, the Debtors, through their attorney, Gary S. Deschenes ("Deschenes"), filed Debtors' Motion to Avoid Lien, on November 13, 2000, involving a lien held by Pierce's Flooring, Inc. ("Pierce") and arising from a default judgment docketed by the Montana Eighth Judicial District Court, Cascade County on April 30, 1998 in *Pierce's Flooring, Inc. v. James Harpole, Joy Harpole, Cascade County Treasurer, Shearson Lehman Mortgage Corp., Internal Revenue Service of the United States, and Montana Department of Revenue*, Case No BVD–97–306. Pierce, on November 28, 2000, filed a response and objection to Debtors' motion and on November 29, 2000, filed an additional objection to Debtors' motion. The Court initially scheduled a hearing on Debtors' motion for December 5, 2000. Upon a motion to continue filed by Debtors and with the consent of Pierce's counsel, Jeffrey T. McAllister ("McAllister"), the Court continued the hearing on Debtors' motion and the objections thereto until January 23, 2001, which was rescheduled to January 17, 2001, given the unavailability of the Great Falls Courtroom on January 23, 2001.

At the scheduled hearing, Deschenes and McAllister appeared and provided brief statements. They stipulated to the admission of Debtors' Exhibits 1 through 6 and Pierce's Exhibit A. and indicated that no additional testimony or exhibits were necessary for the Court to decide this contested matter. The Court ordered the parties to submit simultaneous briefs on the issues raised in the motion and the objection thereto. Briefs have been filed and this matter is ready for decision. This decision constitutes the Court's findings and conclusions on the matter. F.R.B.P. 9014.

## FACTS

On October 2, 1995, Pierce sold to Debtors floor coverings in the amount of $1,966.50; on November 28, 1995, Pierce provided labor to install the floor coverings in the amount of $1,265.00; and on December 10, 1995, Pierce sold additional floor coverings in the amount of $204.00, for a total sum of $3,435.50. Debtors failed to pay Pierce for the floor coverings and labor. Pierce filed on or after January 5, 1996, a construction lien against Jim Harpole for the total amount owed and described Debtors' homestead as the real property upon which the work and labor were provided. As a consequence of nonpayment, Pierce filed, through McAllister, a complaint, dated March 7, 1997, with the State District Court requesting alternative relief[1] through a personal money judgment, and for an order foreclosing its construction lien, together with fees, costs and

---

1. Typically, a construction lien complaint may include at least the following claims: breach of contract/recovery of money; quantum meruit; lien foreclosure; and unjust enrichment.

other equitable relief that the court may grant. The complaint and its incorporated attachments set forth the foregoing facts. Ex. A.

The Commitment for Title Insurance, Ex. 6, identifies as special exceptions on the Debtors' personal residence the following[2]:

| | | |
|---|---|---|
| A claim of Construction Lien in the Amount of | : | $3,435.50 |
| Filed By | : | Pierce's Flooring, Inc., d/b/a Pierce Flooring and Design Center |
| Against | : | Jim Harpole |
| Dated | : | January 5, 1996 |
| Said lien based upon | : | floor coverings and labor |
| Furnished from | : | October 2, 1995 to October 10, 1996 |
| Date Filed | : | January 12, 1996, Document # 14165 |

and

Judgment against James Harpole and Joy Harpole and in favor of Pierce Flooring, Inc. in the amount of $6,436.77 plus interest and costs filed April 30, 1998 as Case No. BDV–07–306, records of Cascade County, Montana.

The State District Court entered a Judgment by Default by Order of Court, dated April 30, 1998, against the Debtors for failing to appear or answer the Complaint after James Harpole was served on March 23, 1997 and Joy Harpole was served on May 23, 1997. The State District Court Judge made the following Conclusions of Law:

The defendants James Harpole and Joy Harpole presently owe plaintiff the amount of $3,435.50, plus interest from January 10, 1996, to the date of judgment in the amount of $1,567.77, plus costs in the amount of $314.00, plus attorney fees in the amount of $1,120.00, plus interest at the rate of ten percent (10%) per annum from the date of this judgment of the above amount.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Pierce's Flooring, Inc., plaintiff, is awarded Judgment against James Harpole and Joy Harpole in the amount of $6,436.77, which includes the principal amount owed, accrued interest, costs, and attorney fees. This judgment shall from the date of this judgment, incur interest at the rate of ten percent (10%) per annum.

The Conclusions of Law and the Judgment do not make any reference to foreclosing a construction lien or that any subsequent hearing would be held to consider issuing a foreclosure decree. In fact, the personal judgment is against Debtors, even though the construction lien only names Jim Harpole. Further, no lien priority is declared in the judgment involving the liens of record, including a purchase money security interest, a federal tax lien, a property tax lien and the construction lien, and no conclusion of law is reached that the lien complies with all the requirements of Montana law or that it is superior to any other liens of record.

On May 21, 1998, Debtors filed this Chapter 13 bankruptcy case. On Schedule F, they scheduled Pierce as a creditor holding an unsecured, nonpriority claim

---

**2.** The Commitment for Title Insurance confirms that no lis pendens or notice of pendency of action was recorded at the time Pierce initiated its complaint to recover money and foreclose its construction lien.

with an unpaid account of $3,500.00. Pierce did not appear in the Chapter 13 case, did not file a proof of claim and did not object to its treatment as a creditor holding an unsecured, nonpriority claim. Debtors' Chapter 13 Plan, as modified, was confirmed by Order of this Court on October 15, 1998. The confirmed Plan was subsequently modified at the request of the Trustee on July 9, 1999.

Based upon the evidence, exhibits and the facts agreed upon by the parties, through their attorneys, the Court finds that the Debtors have an allowed homestead exemption on Lot 7, Block 11, North Riverview Terrace, Section Five, Part 3, an Addition to the City of Great Falls, Cascade County, Montana, according to the official plat thereof on file and of record in the office of the Cascade County Clerk and Recorder, a/k/a 537 Skyline Drive N.E., Great Falls, Montana. Further, the Court finds that the value of the Debtors' homestead is $98,000.00, and the homestead is subject to a trust indenture in favor of GE Capital Mortgage ("GE") which filed Proof of Claim No. 3 on June 15, 1998, asserting an allowed secured claim in the amount of $62,351.25. The current payoff is $53,086.00, including costs. Exhibit 5 further shows the homestead is subject to other liens, including a lien of Pierce in the amount of $6,436.77 [3] Unless Pierce's Judgment incorporates the status of the construction lien, and is considered a statutory lien, Pierce cannot prevail in its argument that its lien arising from the judgment by default should not be avoided as a judicial lien under 11 U.S.C. § 522(f). The Court concludes for the following reasons that the Judgment by Default represents a personal judgment, independent of the construction lien. The construction lien was not merged into the personal judgment. The Judgment by Default is a judicial lien that is avoidable under 11 U.S.C. § 522(f)(1)(A). The construction lien is independent of the judicial lien as Pierce did not pursue foreclosure of the construction lien at the time it applied for the Judgment by Default under its alternative claims for relief. To the extent the construction lien is not barred by the passage of time or is not otherwise determined to be unenforceable, it remains a lien on the Debtors' property.

## DISCUSSION

As noted above, construction lien claimants typically allege at least four claims for relief in their complaint. In reviewing the complaint filed in State District Court by Pierce, the allegations, without a specific designation of claims, request a personal money judgment for breach of contract against Debtors and request foreclosure of the filed construction lien. Pierce on April 30, 1998, requested that a personal judgment for $6,436.77, be awarded against Debtors. Mont.Code Ann. ("MCA") § 71–3–110 provides: "The existence of a lien, as security for the performance of an obligation, does not affect the right of the creditor to enforce the obligation without regard to the lien." This general provision governs the enforcement of liens identified in Chapter 3 of Title 71, MCA. Montana mortgage law has a more specific provision that imposes the "one action" rule contained in MCA § 71–1–222. The Montana Supreme Court, in *Barth v. Ely*, 85 Mont. 310, 278 P. 1002, 1007 (1929), concluded that MCA § 71–3–110 applied generally to

---

**3.** Ex. 5 shows a federal tax lien against James D. Harpole in the sum of $16,450.45. However, the Internal Revenue Service filed two proofs of claim in this case (Nos. 4 and 10), neither of which asserts a tax lien. In addition, Ex. 5 shows a construction lien filed against Jim Harpole and a judgment in favor of Pierce and against James Harpole and Joy Harpole as previously discussed.

all statutory liens identified in Chapter 3 of Title 71, MCA, and the more limiting "one action" rule of MCA § 71–1–222 applied only to obligations that are defined as mortgages under MCA § 71–1–101. The Montana "one action" rule does not apply to the litigation involving the construction lien.

■ The Judgment by Default, based upon the language contained therein and set forth above, constitutes a personal money judgment in favor of Pierce and against Debtors for the amount of $6,436.77. No provision within the Judgment addresses the filed construction lien, the foreclosure of such lien, or that any subsequent proceeding would be scheduled to determine the priority of the liens on the property or that a foreclosure sale would occur. An early Montana case, *Missoula Mercantile Co. v. O'Donnell*, 24 Mont. 65, 60 P. 594, 597 (1900), is instructive:

> The lien is not in any sense the, or any, cause of action. It is merely an incident, ancillary or subsidiary to the main fact, which is the debt. The creditor may waive his lien,—the incidental right,—and pursue the debtor upon his personal liability, but he cannot enforce the lien without ascertaining both the fact of indebtedness and the amount of it in the only way recognized by law; that is, by making the debtor a party, and litigating the question of indebtedness with him.

In a subsequent case, *Bullard v. Zimmerman*, 82 Mont. 434, 268 P. 512, 516–18 (1928), the court concluded that the lien claimant could waive his construction lien and obtain a personal judgment, independent of the construction lien.

> The procedure for the foreclosure of a claim secured by a [construction] lien, under our Code is *sui generis*; it is neither strictly at law nor in equity, but it is a blending of both. (citation omit-

ted.) In so far as the entry of a personal judgment upon the failure of the lien is authorized, the procedure is at law; while the foreclosure of the lien is governed by the rules of equity. Much confusion would be avoided in actions of this character if the question of indebtedness was first tried as an ordinary action at law, and, if anything is found to be due to the lien claimant, then proceed as in equity.

*Wertz v. Lamb*, 43 Mont. 477, 117 P. 89, 93 (1911).

In *Soliri v. Fasso*, 56 Mont. 400, 185 P. 322, 325 (1919), the court considered a factual case very similar to the case *sub judice*, except that a default judgment had been entered by the clerk of court and not by a judge. The Supreme Court concluded that the default judgment was a nullity because it was entered by the clerk when the relief sought involved more than the recovery of money or damages specified in the complaint. The court stated:

> Here, had the plaintiff made valid application to the court for a judgment against Mrs. Fasso, the court could only have determined the questions involved as between her and the plaintiff, leaving undetermined the respective claims of the remaining defendants. Then, upon a trial as between plaintiff and the remaining defendants, unless the plaintiff had waived his lien by the course pursued, the court would have been compelled to render a second judgment, perhaps limiting or modifying the previous one.

*Soliri*, 185 P. at 325. Rule 54(b), Mont. R.Civ.P., is consistent with the *Soliri* conclusion:

> In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims or the

rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and right and liabilities of all the parties.

Consequently, Pierce based upon the record before this Court did nothing to waive its respective claims or construction lien against the remaining parties or against Debtors' property as it may relate to determining priorities of liens for purposes of foreclosure. "The purpose of the liens thus created by statute is to assist in the collection of [construction] claims and not to diminish in anyway the claimant's rights to enforce the obligation of contracts, or any other remedy the claimant may have (footnote omitted). In harmony with the foregoing and to the same general purpose, both the foreclosure of such a lien and a judgment on the contract may be entered for the amount necessary to discharge the debt proven.... In that regard, it should of course be observed that while all possible avenues of relief may be pursued simultaneously, there can be but one satisfaction of the debt (footnote omitted)." *Harris–Dudley Plumbing Co. v. Professional United World Travel Ass'n, Inc.*, 592 P.2d 586, 588 (Utah 1979). "When a claim based on a security interest is reduced to judgment, while the claim may merge into the judgment, the security interest remains intact unless the judgment expressly cancels or avoids it." *In re Chu*, 258 B.R. 206, 209 (Bankr.N.D.Cal. 2001).

Although the foregoing principle concerning merger is pertinent to the case *sub judice*, *Chu* sets forth such principle after finding that the deed of trust merged into the foreclosure judgment. This finding by the *Chu* court distinguishes *Chu* from the present case on the sole issue of whether the construction lien has been merged into the personal judgment against Debtors. In this case, Pierce has not yet obtained a foreclosure judgment within which the construction lien could be merged. No waiver, cancellation or avoidance has occurred of the construction lien, even though the personal judgment has been docketed against Debtors. Given the directive of Mont.R.Civ.P. 54(b), no final judgment as to all litigants has been entered, and the state court case continues, subject to the automatic stay.[4] The construction lien, to the extent it is not time barred, or is not otherwise determined to be unenforceable, remains a lien on the Debtors' property.

Under the Bankruptcy Code, a lien is generally defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). "It includes inchoate liens. In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens." *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6269. By definition, a judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A statutory lien is a "lien arising solely by force of a statute on specified circumstances or conditions, ... but does not include security interest or judicial

---

**4.** "The doctrine of merger is a subset of res judicata and precludes a plaintiff from maintaining an action on the original claim after a final judgment has been entered. Restate-ment (Second) of Judgments § 18 (1980)." *State of California Employment Development Dept. v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1150 (9th Cir.1996).

lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). "A statutory interest is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics'[construction], materialmen's and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien." *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6271. *See also, In re Zerger*, 35 B.R. 42, 43–44 (Bankr.Or.1983), *In re Koski*, 149 B.R. 170, 176–77 (Bankr.Idaho 1992); *In re O'Connell*, 13 Mont. B.R. 271, 274–75 (Bankr.Mont.1994). A security interest is a "lien created by an agreement." 11 U.S.C. § 101(51). Mortgages are included under the definition of security interest. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6271.

■ Given this background, it is important to note that the construction lien in the case *sub judice* was in existence prior to the initiation of the state court action and prior to the filing of this bankruptcy case. If the state court foreclosure judgment had been entered prior to bankruptcy, such judicial action would have been to enforce the lien, not to create the lien. Consequently, the judicial foreclosure would not have changed the statutory lien to a judicial lien. *See Koski*, 149 B.R. at 177. As noted above, however, only a personal judgment for money damages was entered in the state court litigation against Debtors based upon their failure to respond or otherwise answer Pierce's complaint. The entry of the personal money judgment against Debtors, without reference to the construction lien or its foreclo-

sure, constitutes a judicial lien which is avoidable under 11 U.S.C. § 522(f)(1)(A). The lien became a general lien upon all real property owned by Debtors in Cascade County, Montana and was not a specific lien upon the property which was subject to the construction lien. *See Hannah v. Martinson*, 232 Mont. 469, 758 P.2d 276, 278 (1988).

Pursuant to 11 U.S.C. § 522(f)(1)(A), Pierce's judicial lien of $6,436.77 impairs Debtors' homestead exemption of $60,000.00. Under the formula of § 522(f)(2)(A), the sum of Pierce's judicial lien ($6,436.77), all other liens on the property ($53,086.00)[5], and the amount of exemption the Debtors could claim ($60,000.00) is $119,522.77, which exceeds the value of the Debtors' interest ($98,000.00) and therefore impairs the Debtors' homestead exemption to the extent of $21,522.77, which completely consumes Pierce's judicial lien. Thus, the Court finds the Debtors' motion to avoid Pierce's judicial lien satisfies the requirement of § 522(f)(1)(A).

The construction lien, subject to the *in rem* foreclosure action still pending in state district court, which was stayed by the filing of Debtors' bankruptcy, still remains on the Debtors' property. Nothing in the record indicates that Pierce waived, canceled or avoided its construction lien by obtaining the personal money judgment which can arise independent of the *in rem* foreclosure action. The construction lien, not being a judicial lien, but being a statutory lien, cannot be avoid under § 522(f)(1).

■ As an aside, the construction lien further was not affected by 11 U.S.C. § 1327(c). Section 1327(c) provides that upon confirmation of a Chapter 13 plan,

---

**5.** The previously avoided lien held by Accounts Management Corp. in the amount of

$21,157.33 is not considered in the calculation pursuant to § 522(f)(2)(B).

the property vesting in the Debtors becomes free and clear of any claim or interest of any creditor provided for by the plan. In reviewing the file and the proofs of claim filed, the Court finds that Pierce did not file a proof of claim, did not object to confirmation and did not otherwise participate in Debtors' reorganization efforts. Pierce is scheduled in Schedule F as holding an unsecured, nonpriority claim; its litigation against Debtor is listed in the Statement of Financial Affairs under section 4, page 2. Technically, its unsecured claim is provided for by the confirmed plan, but the likelihood of any payment through the plan is nonexistent as it did not file a proof of claim. However, it had filed a prepetition construction lien, subject to pending foreclosure litigation at the time Debtors filed their bankruptcy.

The confirmation of Debtors' plan did not effect an avoidance of Pierce's construction lien; Pierce could rely on its construction lien and did not need to file a proof of claim. The 9th Circuit Bankruptcy Appellate Panel, in *Bisch v. United States,* 159 B.R. 546, 549 (9th Cir. BAP 1993), a Chapter 13 case, considered an analogous situation involving another statutory lien, a tax lien. Its discussion of the tax lien is instructive:

> Once a federal tax lien attaches to property, the property itself becomes liable for the debt. *In re Isom,* 901 F.2d 744, 745–46 (9th Cir.1990). The IRS may rely on its lien for the satisfaction of its debt despite the bankruptcy. *In re Junes,* 99 B.R. 978, 980 (9th Cir. BAP 1989).

* * *

> Failure to file a secured proof of claim in a bankruptcy case might mean that the lienholder will not receive a distribution from the estate. This may mean forfeiting any right to a deficiency, but it

does not waive the lien. "The [debtor's personal] liability may be discharged in bankruptcy ... [but] the tax lien remains in force. Thus the ... liability [on the debtor's] property remains enforceable ...." *Id.* at 981 (citing *In re Isom,* 95 B.R. 148, 151 (9th Cir. BAP 1988), *aff'd,* 901 F.2d 744 (9th Cir.1990)). "The discharge of [the debtor's] personal liability ... to [the IRS] does not effect [sic] the right of the [IRS] to enforce its lien against the debtor's real ... property ...." *Junes,* at 981 (quoting *In re Work,* 58 B.R. 868, 873 (Bankr.D.Or. 1986)). *Johnson v. Home State Bank,* 501 U.S. 78, 79, 111 S.Ct. 2150, 2151, 115 L.Ed.2d 66 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*").

Based upon the foregoing, the Court concludes in the case *sub judice* that the construction lien, although in pending litigation, remains enforceable and was not affected or avoided by the confirmation of Debtors' plan. "[A]ny statutory lien that is valid under state law remains valid through the bankruptcy unless invalidated by some provision of the Code." *Junes,* 99 B.R. at 980. Unless the construction lien is time barred or is otherwise determined to be unenforceable through subsequent judicial proceedings, Debtors' homestead will be subject to Pierce's construction lien and may be subject to execution or forced sale pursuant to MCA § 70–32–202.

IT IS ORDERED that the Debtors' motion to avoid the judicial lien of Pierce's Flooring, Inc. filed November 13, 2000, is granted; Pierce's judicial lien on the Debtors' homestead located at Lot 7, Block 11, North Riverview Terrace, Section Five, Part 3, an Addition to the City of Great Falls, Cascade County, Montana, accord-

ing to the official plat thereof on file and of record in the office of the Cascade County Clerk and Recorder, a/k/a 537 Skyline Drive N.E., Great Falls, Montana, arising from the judgment obtained by Pierce against the Debtors entered on or about April 30, 1998, in the Montana Eighth Judicial District Court, Cascade County, in Cause No. BDV–97–306, is avoided; and the construction lien filed by Pierce on the above described real property is a statutory lien subject to enforceability through an *in rem* foreclosure proceeding, provided such proceeding is not time barred or otherwise determined to be invalid through further judicial proceedings.