In re KACHINA PUBLICATIONS, INC.,
d/b/a Golf Illustrated, Debtor.

D. Christopher WARD, Trustee
in Bankruptcy, Plaintiff,

v.

COMMUNICATIONS DATA SERVICES,
INC., an Iowa corporation,
Defendant.

Bankruptcy No. B–93–13151–PHX–GBN.
Adv. No. 94–0001.

United States Bankruptcy Court,
D. Arizona.

Aug. 23, 1994.

Cathy M. Holt, Lewis & Roca, Phoenix, AZ, and Michael W. Thrall, Nyemaster, Goode, McLaughlin, Voights, West, Hansell & O'Brien, P.C., Des Moines, IA, for defendant CDS.

Michael P. Lane, Brandes, Lane & Joffe, P.C., Phoenix, AZ, for plaintiff D. Christopher Ward.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Chief Judge.

This proceeding arises on cross motions for summary judgment filed by plaintiff D. Christopher Ward, the appointed Chapter 7 trustee ("trustee") and defendant Communications Data Services, Inc., an Iowa corporation ("CDS"). Plaintiff's motion is denied and defendant's motion is granted.

The complaint was filed *inter alia* to invalidate defendant's Iowa statutory artisan's lien under the trustee's strong arm powers. 11 U.S.C. § 545(2). Docket No. 1 at p. 8. The trustee also alleged defendant's possessory lien is a preferential transfer. *Supra* at pp. 9–10. 11 U.S.C. § 547(b).

The facts necessary for an understanding of these issues follow.

### I.

On December 23, 1993, Kachina Publications, Inc. ("debtor") filed a Chapter 7 bankruptcy. Pre-petition debtor published Golf Illustrated Magazine, distributed to consumers across the United States. During the course of publication, debtor developed a subscriber list with pertinent data, estimated to include approximately 400,000 customers.

On July 15, 1992, debtor entered into a subscription fulfillment agreement with CDS. Defendant agreed to handle subscription and mailing matters, provide mailing labels and produce notices of expiration of subscrip-

tions. Debtor agreed to pay CDS on a periodic basis.

Debtor defaulted in its payments. CDS asserted the right to sell the subscription list at auction pursuant to a statutory lien under Iowa Code § 577.1. Defendant alleges a claim against debtor of approximately $163,-271.87. On January 28, 1994, this Court approved sale of the assets for $56,000. Such amount is in escrow pending a resolution of the statutory lien claim.

The issue is whether trustee may avoid the statutory lien defendant claims on the subscriber list.

## II.

A bankruptcy trustee may avoid a statutory lien when the lien is not perfected or enforceable against a bona fide purchaser ("BFP"), whether or not such purchaser exists. 11 U.S.C. § 545(2). The relevant time period is the petition filing date. *Supra.*

■ Whether the lien is enforceable against a bona fide purchaser is determined by state law. *Saslow v. Andrew (In re Loretto Winery Ltd.)*, 898 F.2d 715, 718 (9th Cir.1990); *Souers v. Nevada Ready Mix (Matter of Souers)*, 163 B.R. 346, 349 (Bankr. S.D.Iowa 1994).

Under Iowa law, any person who provides services or furnishes material in making, repairing, improving, or enhancing personal property has a lien for the agreed or reasonable compensation while such property is lawfully in the creditor's possession. Iowa Code § 577.1(1).

In the present case, trustee appears to concede CDS has established an artisans lien under the statute. Regardless, there is clear authority CDS would have such a lien. *See Chemical Bank v. Communications Data Services, Inc.*, 765 F.Supp. 1401, 1404–05 (S.D.Iowa 1991).

In examining state law, courts look to the words of the statute to determine whether the lien meets the bona fide purchaser test and follow accepted rules of statutory construction. *In re Loretto Winery*, 898 F.2d at 721–22.

■ The lien arises upon creditor's taking possession of the list and performing services on it. *Chemical Bank v. Communications Data Services, Inc.*, 765 F.Supp. at 1404. The CDS lien continues so long as the property is lawfully in its possession. Iowa Code § 577.1. Thus, at the time of filing bankruptcy, CDS had a perfected artisans lien on the subscription list lawfully in its possession.

The hypothetical purchaser cannot be taken outside the factual framework of the case. *Loretto Winery*, 898 F.2d at 721. In *Loretto Winery* debtor had possession of the property when bankruptcy was filed. *Id.* That is not this case. State law determines whether a party is a bona fide purchaser. *Briggs v. Kent (In re Professional Investment Properties of America)*, 955 F.2d 623, 627 (9th Cir.1992); *cert. denied*, —— U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). (Section 544 case).

Under Iowa law, a BFP takes property in good faith, from the holder of legal title for valuable consideration, without notice of other equities. *Raub v. General Income Sponsors of Iowa, Inc.*, 176 N.W.2d 216, 219 (Iowa 1970). Notice of an existing right that deprives a vendee of BFP status may be actual or constructive. Before one gains such status, it must be shown the purchase was without actual or constructive notice of another's claim. *Bartels v. Hennessey Brothers, Inc.*, 164 N.W.2d 87, 94 (Iowa 1969).

Here, any purchaser would have actual notice of CDS's claim, as CDS had possession of the files. Thus, such purchaser could not defeat the CDS claim.

Notwithstanding this, trustee argues § 545(2) presumes he is a bona fide purchaser. He argues there is no need to examine whether he had actual or constructive notice of the CDS lien. In short, trustee argues by definition § 545(2) creates a hypothetical bona fide purchaser. As a result, the Court need not examine whether there was notice of the lien, since it is presumed the trustee has met all BFP requirements. Thus, trustee is presumed to have acquired the property without actual or constructive notice of the CDS claim.

This misconstrues the statute. Section 545(2) provides a trustee may avoid a statutory lien that is not perfected or enforceable against a bona fide purchaser. 11 U.S.C. § 545(2). The focus is whether, by the commencement of the case, the creditor has taken all necessary steps to perfect its liens.

*Loretto Winery* instructs courts not to take the bona fide purchaser outside the case's factual framework. 898 F.2d at 721. If the trustee's reasoning is followed, the Court would do just that, by ignoring that CDS had possession on the petition date.

Trustee's authority does not suggest a different result. In *In re English,* 112 B.R. 20 (Bankr.W.D.Ky.1989), creditor filed a mechanics lien post-petition. Creditor argued since debtor had actual knowledge of his claims before bankruptcy, the lien was enforceable. 112 B.R. at 21.

The Court disagreed, noting under § 545(2) the trustee is given the status of a bona fide purchaser on the date of bankruptcy. As of that date, the mechanic's lien was not perfected. *Id.* at 21. The Court concluded the trustee steps into the shoes of a bona fide purchaser and does not share any knowledge of events leading up to lien perfection. Debtor's personal knowledge of creditor's intent to file a lien pre-petition is not imputed to the trustee. *Id.* at 22.

*English* does not declare that notice is irrelevant. It simply holds debtor's subjective knowledge of an unperfected claim is not imputed to the trustee. This is in accord with other cases. In *Koski v. Seattle First National Bank (In re Koski),* 144 B.R. 486, 488 (Bankr.D.Idaho, 1992), the court did not give preclusive effect to a state court decision relying on debtor's actual notice in concluding a lien was not invalidated by failure to notice. The bankruptcy court held debtor's knowledge is not imputed to a hypothetical BFP under Section 545. 144 B.R. at 488–89.

In *Pierce v. Aetna Life Insurance Company (In re Pierce),* 809 F.2d 1356 (8th Cir. 1987), an attorney did not properly perfect his lien. He argued the trustee had both actual and constructive notice of his contingent fee agreement and lien. The Eighth Circuit rejected this argument, stating such notice was irrelevant. The attorney's lien was not perfected against the trustee, who held the status of a hypothetical BFP. *Id.* at 1361.

As noted in the Collier treatise, enforceability of the statutory lien depends upon its perfection as of the petition date. Have necessary steps been taken, by that date, to make the lien enforceable against a bona fide purchaser? That question determines validity. *Collier on Bankruptcy* ¶ 545.04 at 545–19 (15th ed. 1994).

CDS had possession of the files at the petition date. Trustee has not argued that CDS did not hold a valid Iowa artisan's lien. Given this, trustee cannot defeat the lien as a hypothetical bona fide purchaser. Such purchaser has actual notice of the CDS interest by creditor's prior possession of the files.

### III.

The final element is whether to grant summary judgment on 11 U.S.C. § 547(b) allegations. Trustee contends he is not trying to avoid the statutory lien under 547(c)(6). Adversary Docket No. 28 at 2. He instead intends to avoid payments made from debtor within 90 days of the petition. *Supra.* To the extent § 547(c)(6) is an issue, CDS is granted summary judgment. That section provides a trustee may not avoid a statutory lien not avoidable under section 545. Since the transfer is not avoidable under 545, the lien is not avoidable under 547(c)(6).

CDS is correct in asserting any transfer occurred well outside the 90 day period of 11 U.S.C. § 547(b). The lien arose when CDS took possession and began rendering services. *Chemical Bank v. Communications Data Services,* 765 F.Supp. at 1404–05. The affidavit of Kenneth Barloon establishes CDS took possession of the files on July 15, 1992, and had continued possession. Based on

*Chemical Bank,* the lien arose at that time, well outside the 90 day preference period.[1]

ORDERED ACCORDINGLY.

---

1. To the extent trustee is now asserting a § 547 issue regarding *payments* made to CDS during the 90 days period, this is not currently before the Court. It appears trustee would need to amend his complaint to allege this cause of action.